Charles YEKSIGIAN,
Plaintiff–Appellant,

v.

Ralph NAPPI, Howard Nicholas, and
City of Chicago,
Defendants–Appellees.

No. 89–1601.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1990.

Decided April 16, 1990.

William T. Huyck, Chicago, Ill., for plaintiff-appellant.

Frederick S. Rhine, Asst. Corp. Counsel, Office of the Corp. Counsel and Mary L. Mikva, Office of Corp. Counsel, Appeals Div., Chicago, Ill., for defendants-appellees.

Before POSNER, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Charles Yeksigian appeals the dismissal of his federal civil rights claim and pendent state claims against defendants Ralph Nappi, Howard Nicholas, and the City of Chicago. For the following reasons, we reverse the judgment of dismissal and remand the case to the district court.

## I

### BACKGROUND

#### A. *Facts*

On appeal from the dismissal of a complaint under Rule 12(b)(6), we must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them. *Zinser v. Rose*, 868 F.2d 938, 939 (7th Cir.1989); *Gillman v. Burlington N. R.R.*, 878 F.2d 1020, 1022 (7th Cir.1989). We shall affirm the dismissal only if the plaintiff has failed to allege any set of facts upon which relief may be granted. *Zinser*, 868 F.2d at 939.

According to the complaint, plaintiff Charles Yeksigian is a journeyman electrician who has been a career service employee of the City of Chicago since 1962. Defendant Ralph Nappi is employed by the City of Chicago as an electrical mechanics foreman for the Chicago Department of Aviation. Since August 1987, Mr. Nappi has been Mr. Yeksigian's supervisor. Defendant Howard Nicholas is employed by the City of Chicago as the Deputy Commissioner of the Department of Aviation. On December 14, 1987, plaintiff reported to work for his regular shift from 8:00 a.m. to 4:00 p.m. at the H & R Building at O'Hare Airport. At approximately 12:00 noon, Mr. Yeksigian was working at the RB40 Building at O'Hare when he decided to go to lunch at one of the main terminal buildings, where the employees in Mr. Yeksigian's unit had express permission to eat lunch. Mr. Yeksigian drove his car to the main terminals via the only possible route, which required him to leave the airport on an access road, cross over at the first exit, and re-enter the airport. When Mr. Yeksigian returned to the H & R Building at approximately 1:00 p.m., he was confronted by defendant Nappi, who accused him of violating a work rule that forbade leaving the airport. Mr. Nappi then ordered Mr. Yeksigian to sign out and go home; Mr. Yeksigian refused to obey the order and returned to work.

When Yeksigian refused to sign out, Nappi called the Chicago police and asked them to arrest Yeksigian for disorderly conduct. According to the complaint, in attempting to procure the arrest of Yeksigian, Nappi knowingly made false statements to the police and signed a criminal complaint stating that Yeksigian had been suspended from his job, that his presence

on the job was causing a safety hazard, that Yeksigian was acting to alarm and disturb others, and that he was inciting a breach of the peace. Moreover, in an effort to secure Yeksigian's arrest, Nappi arranged to have one of the Chicago police officers speak to defendant Nicholas, who also requested that the plaintiff be arrested.

At approximately 1:30 p.m. that afternoon, Yeksigian was arrested on the charge of disorderly conduct and was held in the lockup at O'Hare until approximately 3:00 p.m. At that time, plaintiff was taken in handcuffs to the Jefferson Park Police Station, placed in that station's lockup, photographed, and fingerprinted. At approximately 5:30 p.m., he was released on bond.

As a result of these actions, Yeksigian sued Nappi, Nicholas, and the City of Chicago under 42 U.S.C. § 1983.[1] He claimed that defendants Nappi and Nicholas were "at all times relevant ... acting in their official capacities and under color of law." R.1 at 4. Thus, Yeksigian alleged that Nappi and Nicholas willfully and maliciously violated his constitutional rights by procuring his arrest. He further alleged that defendant Nicholas' policymaking authority regarding the decision to have him arrested subjected the City of Chicago to municipal liability under § 1983.

B. *District Court Order*

In a brief memorandum opinion and order, the district court granted all three defendants' motions to dismiss. Mem.Op. No. 88 C 5875, 1989 WL 10865 (Feb. 2, 1989) [hereinafter Mem.Op.]. The district court based its decision to dismiss on the conclusion that Mr. Yeksigian had not sufficiently alleged a municipal policy or custom that caused the alleged constitutional violation. Mem.Op. at 2–3. The court stated two reasons for its conclusion. First, the court determined that neither Mr. Nappi nor Mr. Nicholas had policymaking authority with respect to the decision to arrest Mr. Yeksigian. That decision, explained the district court, was made by two

Chicago police officers. *Id.* at 3. Second, the district court noted that Yeksigian's municipal liability claim was deficient because the plaintiff failed to plead any facts to show a pattern of conduct or series of incidents violative of constitutional rights. The court concluded that Yeksigian's reliance upon his single incident of alleged mistreatment was insufficient to allege a "policy" for purposes of § 1983 municipal liability. *Id.*

In response to Mr. Yeksigian's motion to amend the judgment to reflect that the defendants had been sued in their individual capacities, the district court held that the question need not be decided because, in any event, the complaint alleged that the defendants acted only as employers, not as agents of the arresting police officers. "[P]roviding false information to an arresting officer is not, by itself, sufficient to state a claim against an employer under Section 1983." R.34 at 2.

II

ANALYSIS

At the outset, we must emphasize that this case comes to us at a *very* early stage in the litigation. We have only the complaint before us and, as we already have noted, we are obliged to accept as true Mr. Yeksigian's well-pleaded factual allegations and the inferences reasonably drawn from them.

■ As a preliminary matter, we must face squarely an issue that the district court approached obliquely—whether Mr. Nappi and Mr. Nicholas have been sued in their individual capacities. A suit against a municipal official in his official capacity is construed as a suit against the municipality. *See Kentucky v. Graham,* 473 U.S. 159, 166–67 & n. 14, 105 S.Ct. 3099, 3105–06 & n. 14, 87 L.Ed.2d 114 (1985); *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 381–82 (7th Cir.1988). Such actions against the municipality are not barred by the eleventh

---

1. Yeksigian also asserted pendent state law claims for false imprisonment, malicious prose-

cution, and intentional infliction of emotional distress.

amendment. *Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14.

■ In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only. *Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir.1988); *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir.1985). At oral argument, counsel for the plaintiff stated his belief that the plaintiff was suing Nappi and Nicholas in their individual capacities, but has offered no reason for his failure to state explicitly this intent in the complaint. Nor can we say, on the basis of the record before us, that the parties have treated the suit as one against the officials in their individual capacity. *See Brandon v. Holt*, 469 U.S. 464, 469–71, 105 S.Ct. 873, 876–78, 83 L.Ed.2d 878 (1985); *see also Conner v. Reinhard*, 847 F.2d 384, 394 n. 8 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). Accordingly, we hold that, on this complaint, the individual defendants are sued in their official capacities only.

Having resolved this preliminary issue, we must now address the two central issues presented by the parties. First, we must decide whether the complaint alleges activity undertaken under the color of state law. If we conclude that the action was taken under the color of state law, we must then decide whether the complaint alleges that the defendants' action was undertaken pursuant to a plan or policy that could justify the imposition of liability on the municipality.

■ In our view, Mr. Yeksigian has alleged facts sufficient to support the conclusion that Mr. Nappi and Mr. Nicholas were acting under the color of law. As the district court noted, there is authority for the proposition that an individual does not act under color of state law by merely supplying false information to an arresting officer. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985) (citing *Butler v. Goldblatt Bros.,*

*Inc.*, 589 F.2d 323, 326–27 (7th Cir.1978), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979)). In those cases, however, a *private* party had provided the false information. By contrast, this case involves city supervisory personnel, who allegedly abused their authority as city supervisory personnel, to secure without justification the arrest of an employee under their supervision at a city-owned facility. The fact that these city employees may have acted *in excess* of their authority is irrelevant to the color of law inquiry. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *cf. Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir.1989) (state game warden not acting under color of state law when his report to police of his altercation with a private landowner led to the landowner's arrest). Accordingly, the complaint sufficiently alleges that the defendants' actions were taken under the color of state law.

■ Since we have determined that the complaint sufficiently alleges action taken under color of state law, we must now determine whether those same allegations sufficiently set forth a municipal plan or policy that, if found to be unconstitutional, could serve as the predicate for municipal liability. As this court acknowledged in *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988), the Supreme Court has held that a municipality "can be held liable under section 1983 for a single decision by municipal policymakers if the decision to adopt a particular course of action is directed by those who establish governmental policy." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Mr. Yeksigian alleges in his complaint that Deputy Commissioner of Aviation Nicholas had policymaking authority with respect to the decision to procure his arrest.

The defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint. *See Gomez*

*v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Absent a clear showing by the defendants that Mr. Nicholas was not such a "final policymaking authority" with respect to that decision, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–27, 108 S.Ct. 915, 923–26, 99 L.Ed.2d 107 (1988) (plurality opinion), we must conclude that it was error for the district court to dismiss the complaint. On remand, if the defendants elect to renew their motion to dismiss, they must establish that, as a matter of "state and local positive law," or as a matter of " ' "custom or usage" having the force of law,' " neither individual defendant was a final policymaker. *See Jett v. Dallas Indep. School Dist.*, —— U.S. ——, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (quoting *Praprotnik*, 485 U.S. at 124 n. 1, 108 S.Ct. at 924 n. 1).

Accordingly, the judgment of the district court is reversed and the case is remanded for proceedings in conformity with this opinion.

REVERSED AND REMANDED.