Elizabeth KINNEY, Regional Director For Region 13 of the National Labor Relations Board, for and on Behalf of The National Labor Relations Board, Petitioner,

v.

DOMINICK'S FINER FOODS, INC.; Donna's Distribution, A Subsidiary of Dominick's Finer Foods, Inc., Respondent,

and

Produce, Fresh & Frozen Fruits and Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen and Helpers Union, Local 703, A Division of Truck Drivers, Chauffeurs, Warehousemen and Helpers Union 707 Affiliated With the National Production Workers Union, Respondent.

No. 91 C 4217.

United States District Court, N.D. Illinois, E.D.

Oct. 3, 1991.

Sheryl G. Sternberg, N.L.R.B., Chicago, Ill., for Elizabeth Kinney, Regional Director for Region 13 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board.

Ralph Andrew Morris, David L. Miller, John J. Murphy, Jr., Neal Petronella, Ko-

var, Brittain, Sledz & Morris, Chicago, Ill., for Dominick's Finer Foods, and Donna's Distribution, a subsidiary of Dominick's Finer Foods.

Jesse Outlaw, Jesse Outlaw & Associates, Chicago, Ill., Cora M. Vaughn, Vaughn & Associates, Gary, Ind., for Local 703 Produce, Fresh & Frozen Fruits and Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape and Allied Employees, Drivers, Chauffeurs, Warehousemen and Helpers Union, a div. of Truck Drivers, Chauffeurs, Warehousemen and Helpers Union 707 affiliated with the Nat. Production Workers Union.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

### INTRODUCTION

Elizabeth Kinney, Regional Director For Region 13 of the National Labor Relations Board (hereinafter the "Board"), suspects that respondents Dominick's Finer Foods, Inc. and its subsidiary Donna's Distribution (collectively hereinafter "Dominick's") have *inter alia* violated Sections 8(a)(1), (2) and (5) of the National Labor Relations Act (the "Act"). The Board also suspects respondent Produce, Fresh & Frozen Fruits and Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen and Helpers Union, Local 703, a division of Truck Drivers, Chauffeurs, Warehousemen and Helpers Union, Local 707, affiliated with National Production Workers Union (hereinafter "Local 707 NPWU") of having violated *inter alia* Section 8(b)(1)(A) of the Act. The General Counsel of the National Labor Relations Board has issued complaints against the respondents pursuant to § 10(b) of the Act, 29 U.S.C. § 160(b). Consequently the respondents are in the process of defending against the charges in an administrative proceeding. A hearing before an Administrative Law Judge of the National Labor

Relations Board has been scheduled to begin September 30, 1991.

Pending the resolution of the administrative proceedings, the Board has petitioned this court pursuant to § 10(j) of the Act, 29 U.S.C. § 160(j), for injunctive relief restraining the respondents from continuing to engage in certain specified conduct (discussed below) allegedly in further violation of the Act. Congress enacted § 10(j) to permit district courts to grant interim injunctive relief while the administrative adjudication of the dispute "lumbers to a conclusion." *Kinney v. Pioneer Press*, 881 F.2d 485, 486 (7th Cir.1989). The pace of N.L.R.B. proceedings has been said to be "notoriously glacial." *Boire v. International Brotherhood of Teamsters*, 479 F.2d 778, 788 (5th Cir.1973). Thus, designed to protect the status quo during administrative delay, Section 10(j) provides:

> The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall ... have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).

Respondent Local 707 NPWU has moved under Rule 12(b)(6) to dismiss the Board's petition for failure to state a claim upon which relief can be granted.[1] This court must now decide the merits of Local 707 NPWU's amended motion to dismiss; it is *not* deciding at this juncture whether or not to issue the injunctive relief. That question is not yet before the court.

### STANDARD OF REVIEW

As Respondent Local 707 NPWU stated (although subsequently ignored) in its

---

1. Respondent Dominick's has not moved to dismiss and has filed an answer.

brief, in ruling on a 12(b)(6) motion, the court must accept "all allegations in the complaint as true." Resp.Br. at 7, quoting *Collins v. County of Kendall,* 807 F.2d 95, 99 (7th Cir.1986); *see also Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990). Respondent's motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see generally* C. Wright & A. Miller, 5A *Federal Practice and Procedure:* Civil 2d § 1357 (West Publishing, 2d ed. 1990).

■ In this case, the relief requested is temporary injunctive relief under 29 U.S.C. § 160(j) pending administrative adjudication of the charges of unfair labor practices. In order to determine whether the Board's petition states a claim for such relief, it is necessary to analyze the requirements the Board must meet in order to be granted a § 10(j) injunction. Local 707 NPWU incorrectly cites *Squillacote v. Local 248, Meat and Allied Food Workers,* 534 F.2d 735 (7th Cir.1976) (*"Meat Workers"*) as providing the standard for § 10(j) injunctions. The Seventh Circuit, however, choosing not "to perpetuate the effects of [its] own mistakes," abandoned the *Meat Workers* approach in *Kinney v. Pioneer Press,* 881 F.2d 485 (7th Cir.1989). Instead, the *Pioneer Press* court held that "[o]nce the Board seeks injunctive relief under § 10(j), the only question for the court is whether the Board has demonstrated that relief is 'just and proper' under the approach traditionally applied to equitable cases filed by public agencies." *Id.* at 493.

■ That "traditional approach" requires the Board to demonstrate (1) no adequate remedy at law, (2) irreparable harm in the absence of an injunction exceeding the irreparable harm the other side

will suffer if the injunction issues, (3) a reasonable likelihood of winning on the merits, and (4) harm to the public interest stemming from the injunction that is tolerable in light of the benefits achieved by the relief. *Id.* at 490 n. 3. *Pioneer Press* also indicates that district courts should especially bear in mind the effect on the public interest in determining whether or not to grant a § 10(j) injunction. *See id.* at 491.

As stated above, however, this court is not now deciding whether or not to grant injunctive relief. Local 707 NPWU's motion to dismiss introduces an additional layer of analytic complexity. This court is deciding whether the face of the complaint alleges facts which, if assumed to be true, are sufficient to entitle the Board to the relief it requests. In other words, this court is merely checking to see whether the facts alleged in the Board's petition meet the traditional standard for an injunction. It is *not* checking whether the Board *in fact* has a likelihood of prevailing at the administrative hearing or *in fact* meets the other requirements of a § 10(j) injunction.

## DISCUSSION

### A. *Review of Facts* [2]

The Board's petition alleges that both before and after October 5, 1990, Produce, Fresh & Frozen Fruits and Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen & Helpers Union Local 703, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO (hereinafter "Teamsters Local 703") was designated the exclusive collective-bargaining representative of two classifications of Dominick's workers.[3] The petition also alleges that until October 5, 1990, Dominick's recognized Teamsters Lo-

---

**2.** As noted above, this court must take as true all the well-pleaded factual allegations of the petition.

**3.** Those two classifications, collective bargaining units within the meaning of Section 9(b) of the Act, were (1) drivers and warehouse persons (excluding all sales personnel, office clerical,

guards and supervisors) and (2) all warehouse persons (excluding all sales personnel, office clerical, guards and supervisors) working at any facility operated by Dominick's within 75 miles of either of two of Dominick's facilities in Northlake, Illinois. *See* Petition Par. 7(j).

cal 703 as the exclusive collective-bargaining representative. That recognition has been embodied in successive collective-bargaining agreements, the most recent of which were effective by their terms from January 1, 1987 through March 31, 1987 and were thereafter extended by amendments until March 31, 1996.

The Board's petition alleges further that on or about October 5, 1990, Dominick's withdrew its recognition of Teamsters Local 703 as the exclusive collective-bargaining representative and since that date has refused to bargain with Teamsters Local 703. At the same time, Dominick's granted recognition to and bargained with Local 707 NPWU as the exclusive collective-bargaining representative. The Board also alleges that Local 707 NPWU did not represent an uncoerced majority of employees at the time that Dominick's allegedly dumped Teamsters Local 703 and began to bargain instead with Local 707 NPWU.

In addition, the Board alleges its belief that in the absence of the issuance of a § 10(j) injunction, Dominick's will persist in recognizing Local 707 NPWU as the exclusive bargaining agent and that they will continue to bargain during the pendency of the administrative proceedings. The effect of a denial of injunctive relief will allegedly be the improper ouster of a representative union, the entrenchment of a minority union in its place and the consequential abrogation of employee freedom of choice in selecting a bargaining representative. The Board further alleges that a denial of injunctive relief will also cause employee support for Teamsters Local 703 to erode. The Board fears that Dominick's would then reap an improper benefit from its unlawful conduct by undermining employee support for Teamsters Local 703 and thereby impairing that union's ability to negotiate future contracts and otherwise to represent its members. By the same token, the Board alleges that a denial of injunctive relief and the weakening of Teamsters Local 703 would restrain employees from exercising rights protected by the Act, such as engaging in union or other protected concerted activities.

Based on the foregoing factual allegations, the Board seeks comprehensive injunctive relief, presently described in part. Its petition requests that this court issue an order enjoining Dominick's from recognizing Local 707 NPWU as the exclusive collective-bargaining representative (unless and until it is certified by the Board), from bargaining with Local 707 NPWU and from giving it any "unlawful" assistance. The Board's petition also requests an order requiring Dominick's to recognize Teamsters Local 703 as the exclusive collective-bargaining representative and requiring Dominick's to, upon request, bargain in good faith with Teamsters Local 703. In addition, the petition requests an order requiring Dominick's to comply with the terms of all extant collective bargaining agreements with Teamsters Local 703.

The Board also seeks an order restraining Local 707 NPWU's conduct. The petition requests that this court enjoin Local 707 NPWU from continuing to accept recognition from Dominick's as the exclusive collective-bargaining representative and from accepting "unlawful" assistance from Dominick's. The petition also requests an order requiring Local 707 NPWU to suspend its exclusive representation unless and until certified by the Board.

B. *Analysis*

Respondent Local 707 NPWU's motion to dismiss argues that the Board's factual allegations do not state a claim for relief because they do not demonstrate a violation of the Labor Relations Act. In making this argument, Local 707 NPWU introduces many facts not alleged in the complaint. It introduces those facts in a three page "Statement of Facts" at the beginning of its memorandum in support of its motion. The Statement of Facts makes no reference to the complaint or to any other source for these facts. Nonetheless, many of the undocumented facts mentioned in the Statement of Facts are crucial to Local 707 NPWU's motion inasmuch as they cast doubt upon Teamsters Local 703's continuing status as the exclusive collective-bargaining representative.

For instance, the Statement of Facts declares that from September 28, 1990 to October 4, 1990, Teamsters Local 703 and Local 707 NPWU were joint representatives of Dominick's employees. The Statement of Facts declares further that the joint representation was effected by a September, 1990 Memorandum of Agreement entered into between Dominick's and Teamsters Local 703, a memorandum which amended the collective bargaining agreement which had previously existed between them. In addition, Local 707 NPWU's brief states that prior to the execution of the Memorandum of Agreement, Dominick's was presented with petitions, signed by a majority of its employees, authorizing the amendment to the collective bargaining agreement. The Statement of Facts also asserts that on October 4, 1990, Teamsters Local 703 notified Dominick's that it was disclaiming interest in representing Dominick's employees.

■ All those facts will be disregarded, however. This court is not disregarding the facts because it finds them irrelevant. On the contrary, those facts seem crucial to the disposition of this case and this court anticipates their eventual reintroduction in a more appropriate context, *i.e.*, in a subsequent motion for summary judgment or in a hearing on the merits. The introduction, however, of additional facts in Respondent Local 707 NPWU's brief was improper in a Rule 12(b)(6) motion which is strictly a procedural device to test the sufficiency of the plaintiff's pleadings. *See Yeksigian v. Nappi,* 900 F.2d 101 (7th Cir.1990).

Rule 12(b) permits courts to view motions to dismiss as motions for summary judgment under Rule 56 if the motion is accompanied by matters outside the pleading. Even if this court were inclined to regard this motion as a motion for summary judgment it would be unable to do so, however. Respondent Local 707 NPWU attached no affidavits, no transcripts of depositions, no admissions, no answers to interrogatories—nothing—to create a record upon which to introduce facts not included in the Board's pleadings. Moreover, a motion for summary judgment would have to comply with General Rule 12(m) of the Northern District of Illinois requiring a movant for summary judgment to file a Statement of Material Uncontested Facts replete with references to the record.

In its memorandum in opposition to the amended 12(b)(6) motion, the Board apparently accepted the extra facts introduced and relied upon in Local 707 NPWU's brief. Why it did so is unclear. If the parties wish to argue a summary judgment motion, then one of them should make such a motion and the parties should attach the proper documentation and comply with General Rules 12(m) and 12(n). This court will not pick through the Board's brief and figure out which facts it is conceding. To do so would be contrary to the purpose of General Rules 12(m) and 12(n), *see Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101 (7th Cir.1990), and also would require the acceptance of facts not properly documented in accordance with Federal Rule 56. To do so would also be inconsistent with the procedural posture of a rule 12(b)(6) motion to dismiss.

Turning to the merits, it appears that based on the facts alleged in the complaint the Board has a likelihood of prevailing at the administrative proceedings. The administrative law judge is likely to find that Local 707 NPWU's alleged role in the elbowing out of Teamsters Local 703 (again, assuming the facts of the petition) violates § 8(b)(1)(A) of the Act. § 8(b)(1)(A) provides that:

> It shall be an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in section 157 of this title [pertaining to right of employees to organize, form and join labor unions of their own choosing].

29 U.S.C. § 158(b)(1)(A). *See Haddon House Food Products, Inc. v. N.L.R.B.,* 764 F.2d 182 (3rd Cir.1985), *cert. denied* 475 U.S. 1011, 106 S.Ct. 1187, 89 L.Ed.2d 303 (1986) (rival nonincumbent union committed an unfair labor practice in violation of § 8(b)(1)(A) by accepting recognition of employer even if it was unaware that its

rival had filed a valid representation petition).

In addition, it is not obvious from the petition that the Board would be unable to prove that the irreparable harm it (and the public) would suffer if an injunction were wrongly denied is at least as great as the irreparable harm that Respondents (and the public) would suffer if a § 10(j) injunction were wrongly granted. The petition alleges a plausible outcome resulting in the irreparable erosion of legitimate and protected employee rights were this court to fail to issue a warranted injunction.

## CONCLUSION

For the foregoing reasons, Local 707 NPWU's amended motion to dismiss is denied. In addition, this court suggests that henceforth the parties follow the analytic framework laid out in *Kinney v. Pioneer Press*, 881 F.2d 485 (7th Cir.1989).