Claire E. WRIGHT, Trustee U/A 7–23–81 Claire E. Wright Trust, Joan C. Howard and Alexander C. Sands, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 91 C 3517.**

United States District Court, N.D. Illinois, E.D.

July 1, 1992.

---

Marshall Patner, Jeremy W. Hobbs, David Hurwitz, Marshall Patner & Associates, P.C., Chicago, Ill., Joseph H. Weiss, Law Offices of Joseph H. Weiss, New York City, Arne R. Rode, Chicago, Ill., Jules Brody, Patrick K. Slyne, Stull, Stull & Brody, New York City, Stuart Wechsler, Robert Harwood, Wechsler Skirnick Harwood Halebian & Feffer, New York City, Robert D. Allison, Law Offices of Robert D. Allison, Chicago, Ill., for plaintiffs Wright, et al.

Donato A. Evangelista, William C. Pierson, Anthony L. Clapes, International Business Machines Corp., Armonk, N.Y., David L. Schiavone, Christopher Q. King, Sonnenschein Nath & Rosenthal, Chicago, Ill., Thomas D. Barr, Evan R. Chesler, Cravath, Swaine & Moore, New York City, for defendant International Business Machines Corp.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this consolidated class action, plaintiff Claire E. Wright, Trustee U/A 7–23–81 Claire E. Wright Trust ("Wright"), individually and on behalf of others similarly situated, sues International Business Machines Corporation ("IBM") for securities fraud, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. IBM moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

### I. Factual Allegations

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990) (citation omitted). In deciding a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true and view those allegations in the light most favorable to the plaintiff. *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989).

Wright and members of the putative class purchased IBM common stock between January 17, 1991, and March 19, 1991 (the "class period"). Complaint ¶¶ 6, 8. Wright alleges that during the class period, IBM, through certain of its officers, made several false and misleading statements of material fact and omitted other material facts. *Id.* ¶ 14. Wright specifically alleges IBM made the following misleading statements:

(a) During a January 17, 1991, telephone conference with security analysts to announce IBM's 1990 fourth quarter earnings, James Clippard, IBM director of investor relations, stated that IBM expected to experience continued revenue growth in 1991. *Id.* ¶ 21. Clippard's statement was intended as an assurance to investors and prompted security analysts to project 1991 IBM first quarter earnings in a range comparable to the level achieved in the first quarter of 1990. *Id.* ¶ 22.

(b) On January 29, 1991, IBM issued and distributed its 1990 annual report for the year ending December 31, 1990. The annual report contained a letter from John F. Akers, IBM Chairman of the Board, to shareholders stating:

> Nineteen Ninety was a good year for IBM. Despite mounting economic and political uncertainties around the world, our performance improved substantially. Worldwide results were encouraging— revenues and earnings increased while

our ongoing cost and expense rate declined.

\* \* \* \* \* \*

As we begin 1991, weakening economies ... high interest rates ... events in the Middle East and elsewhere in the world—are affecting customer buying decisions. There are also tough challenges within our industry—from growing customer requirements for standards and open systems, to the shift in demand from hardware to software and services, to intense pressures from lean and agile competitors.

We believe IBM is well-positioned to prosper in this environment. However, we are managing our business prudently as we pursue our long-term growth and increased profitability.

\* \* \* \* \* \*

Our 1990 results were encouraging. We are on the right course, although much remains to be done. The actions we have taken to make IBM a more competitive company are serving us well, and these uncertain times call for continued prudence in managing our business. *Id.* ¶ 24.

(c) The 1990 annual report also included a question and answer section in which Akers responded to the question "What are IBM's prospects within the industry?" by stating:

Over the long term, I'm optimistic. Our strategy is working. The fact that we were able to deliver substantially improved results in 1990 compared with our 1989 performance bears that out.

I am encouraged by customer response to our new products.... Our range of products and service is the strongest in our history. Our geographic diversity continues to serve us well. And we have seen profit improvements as a result of our ongoing restructuring activities.

Over the short run, we face uncertain conditions that are affecting markets and economies worldwide. We will continue to work to make the IBM company leaner, more competitive and more efficient. We believe our actions place us in a stronger position to face adverse economic conditions, and will enable us to capitalize on the growth opportunities we see for our business. *Id.* ¶ 25.

Wright contends these three statements by IBM officials were materially false and misleading in light of the following undisclosed information.

(a) A November 1990 internal report prepared by IBM economists reported an industry-wide slowdown in the purchase of computer hardware that showed no sign of abatement in the near future. *Id.* ¶ 15.

(b) A January 25, 1991 return on equity projection chart prepared by IBM Controller Michael Van Vranken stated that IBM faced "significant 90–91 gross profit erosion caused by price competition and business mix" that "cost, expense, and asset controls [could] not offset [ ] in [the] short term." *Id.* ¶ 16.

(c) A sentence edited out of an early draft of the question and answer section of the 1990 annual report stated "[c]urrent economic and geopolitical uncertainties are negatively impacting the near-term outlook." *Id.* ¶ 17.

In sum, Wright contends IBM officials knew that due to the hostile economic climate and IBM's position within the computer industry, IBM would suffer from: a fiat first quarter in 1991; reduced earnings during the first half of 1991; and significantly eroded profits for all of 1991. *Id.* ¶ 19. IBM's alleged false statements regarding future financial performance caused an artificial inflation in the price of IBM common stock, which rose in value from $112 to $140 per share during the class period. *Id.* ¶ 28. On March 19, 1991, IBM disclosed in a telephone conference call to security analysts that IBM was expecting to show a significant drop in earnings during the first quarter of 1991. *Id.* ¶ 29. This disclosure, in conjunction with stock market trading trends, resulted in a $12 drop in common stock share value. On April 12, 1991, IBM reported that its operating earnings had plunged 48.7 percent during the first quarter of 1991.

II. Procedural History

In June 1991, Wright filed this class action alleging that IBM's misstatements and material omissions constituted securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. On July 30, 1991, Wright filed a consolidated and amended class action complaint expanding the original complaint with additional counts of securities and common law fraud. At the conclusion of written discovery that entailed a review of over 120,000 documents, IBM filed a motion for judgment on the pleadings on March 19, 1992. Wright responded to IBM's motion by filing this consolidated and second amended complaint. This third complaint significantly reduces the class and class period from those asserted in the first amended complaint and eliminates all claims previously advanced except for a single § 10(b) and Rule 10b–5 claim. IBM now moves for dismissal pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## DISCUSSION

 Generally, the federal system of notice pleading does not favor dismissal for failure to state a claim. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). However, dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to the relief requested. *Illinois Health Care Ass'n v. Illinois Dept. of Health*, 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Additionally, if the complaint fails to allege a necessary element required to obtain relief, dismissal is in order. *R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co.*, 895 F.2d 279, 281 (7th Cir.1989). The defendant has the burden of establishing the legal insufficiency of the complaint. *Yeksigian v. Nappi*, 900 F.2d 101, 104–05 (7th Cir.1990).

 Section 10(b) protects investors from dishonest practices associated with the purchase or sale of securities. Pursuant to its authority under § 10(b), the Securities and Exchange Commission promulgated Rule 10b–5, which makes it unlawful for any person, in connection with the purchase or sale of a security "to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). To establish a violation of § 10(b) and Rule 10b–5, Wright must demonstrate that IBM:

(1) made an untrue statement of material fact or omitted a material fact that rendered certain statements misleading; (2) in connection with a securities transaction; (3) with the intent to mislead; and, (4) that caused Wright to engage in a securities transaction that resulted in a loss. *See Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir.1989); *In re VMS Secur. Litigation*, 752 F.Supp. 1373, 1393 (N.D.Ill.1990).

IBM contends that the challenged statements and omissions upon which this action is based lack the requisite materiality necessary to support a securities fraud claim. In arguing lack of materiality, IBM raises a threshold issue that is dispositive of the present motion. IBM asserts that the challenged statements and omissions are merely speculative and subjective opinions and projections regarding future company performance that are not actionable under § 10(b) and Rule 10b–5.

 Challenged misrepresentations or omissions generally must relate to material facts in order to be actionable under § 10(b) and Rule 10b–5. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988). Thus, actions for violations of the federal securities laws typically may not be predicated on mere opinions or projections. *See Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515 (7th Cir.1989); *In re VMS*, 752 F.Supp. at 1397. However, the recent trend in securities case law has moved toward recognition of an expanding range of opinions and projections as potentially actionable under § 10(b) and Rule 10b–5. *See In re First Chicago Corp. Secur. Litigation,*

769 F.Supp. 1444, 1452 (N.D.Ill.1991); *see generally In re Apple Computer Secur. Litigation,* 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). The circumstances under which projections or opinions may give rise to liability have been described as follows:

> A projection or statement of belief contains at least three implicit factual assertions: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement. A projection or statement of belief may be actionable to the extent that one of these implied factual assertions is inaccurate.

*In re Apple Computer,* 886 F.2d at 1113.

■ The allegations stated in the complaint focus attention on the third factor. In essence, the complaint alleges that the publicly stated opinions and projections made by Akers and Clippard were misleading because of undisclosed information known to or recklessly disregarded by IBM that undermined the accuracy of the statements. These allegations do not withstand scrutiny.

*i. November 1990 IBM Economist Report*

■ The November 1990 report generated by IBM's economists is devoted exclusively to world, national and computer industry economic conditions and trends.[1] The report compiles and collates public information readily available to the investing public. The federal securities laws generally require disclosure only of non-public, "firm-specific" information. *Wielgos v. Commonwealth Edison Co.,* 892 F.2d at 515. It is for investors and analysts to combine firm-specific information with knowledge about the competition, the in-

dustry and the economy to produce a value for the stock. *Id.* IBM therefore had no duty to disclose the November 1990 internal report.

Additionally, the information contained in the November 1990 internal report is not inconsistent with the challenged public statements of Akers and Clippard. The November 1990 internal report portrays a harsh competitive environment resulting from a weakening international economy and a slowdown in the growth of the computer industry. To the extent Akers' forward-looking comments to shareholders might be construed as optimistic, that optimism is dampened by repeated cautionary references to the same sobering international, national and industry economic conditions reflected in the November 1990 internal report.

Clippard's statement to analysts, as alleged by Wright, is not hedged with caution. However, the second amended complaint contains no allegations that might support an inference that Clippard's assertion of expected revenue growth in 1991 necessarily conflicts with the uncertain and competitive environment reflected in the November 1990 internal report. Indeed, the November 1990 report projects merely a slowdown in the growth of computer hardware purchases, rather than an actual decline in sales, as Wright appears to suggest.

*ii. January 1991 Controller Projections*

■ The January 1991 internal report generated by IBM controller Michael Van Vranken projects return on equity performance for IBM in 1991 and beyond. As an initial matter, examination of the internal report reveals that the projections are based on calculations that specifically exclude significant financial and economic factors. The projections are less than com-

---

[1] IBM has submitted as part of its motion to dismiss the documents referred to and relied upon by Wright in bringing the present action. Consideration of documents incorporated by reference in a complaint is appropriate in determining the sufficiency of an action brought pursuant to the federal securities laws. *See,*

*e.g., In re VMS,* 752 F.Supp. at 1394 n. 21 (N.D.Ill.1990); *see* 5 Wright, Miller & Kane, *Federal Practice & Procedure,* § 1327 at 762–63 (2d ed. 1990) ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading").

plete and final internal estimates. "Firms need not disclose tentative internal estimates even though they conflict with published estimates, unless the internal estimates are so certain that they reveal the published figures as materially misleading." *Wielgos v. Commonwealth Edison Co.*, 892 F.2d at 516; *Panter v. Marshall Field & Co.*, 646 F.2d 271, 291–93 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *see also In re Convergent Technologies Secur. Litigation*, 948 F.2d 507 (9th Cir.1991).

Additionally, Akers' and Clippard's public statements are consistent with the January 1991 internal projections. Notably, the projection of return on equity is based on an assumed growth in revenues of seven percent. Van Vranken's January 1991 assumption of seven percent revenue growth is consistent with Clippard's public assertion of expected revenue growth.

The internal report does state that IBM might suffer an erosion in gross profits due to price competition and business mix that cost, expense and asset controls could not offset in the short run. However, the report also concludes that recently implemented internal financial controls would yield a steady overall increase in return on equity from 1991 through 1993. These internal estimates and conclusions are directly reflected in Akers' statements published in the annual report and letter to shareholders. Akers expressed caution and uncertainty regarding IBM's short-term prospects due to the prevailing harsh competitive environment. Akers reserved his optimism exclusively for the company's long-term prospects. The January 1991 internal projections, far from undermining the integrity of Akers' and Clippard's public statements, provide a reasonable basis for their general assessments of IBM's future performance. *In re Apple Computer*, 886 F.2d at 1113; *see Wielgos v. Commonwealth Edison Co.*, 892 F.2d at 514 (future projections having reasonable basis when made not actionable if too optimistic).

### iii. Language in Prior Draft of Annual Report

■ The final alleged omission is a single sentence stricken from an earlier draft of the 1990 annual report stating that "[c]urrent economic geopolitical uncertainties are negatively impacting the near-term outlook." Here, Wright is engaged in editorial semantics that are not a concern of the securities laws. Whether or not a company employs the adjectorial characterizations that a plaintiff would have chosen should not be the focus of the court's inquiry. *Kowal v. MCI Communications Corp.*, No. 90–2862, 1992 WL 121378 *4, 1992 U.S.Dist.LEXIS 7437 *13 (D.D.C. May 19, 1992) (Penn, C.J.), citing *In re Seagate Tech. II Securities Litigation*, [1989 Trans. Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,502 at 93,201, 1989 WL 222969 (N.D.Cal.1989).

Additionally, the omitted statement is indistinguishable from the numerous cautionary remarks regarding broader economic and market conditions that pepper Akers' published statements. The challenged portion of the question and answer section of the 1990 annual report includes Akers' assessment that "over the short run," IBM was facing "uncertain conditions that are affecting markets and economies worldwide." Complaint ¶ 25. In the challenged portion of the accompanying letter to shareholders, Akers similarly stated that he believed that "weakening economies ... high interest rates ... events in the Middle East and elsewhere in the world—[were] affecting customer buying decisions." *Id.* ¶ 24. Akers' optimism for strictly longer term prospects also implies caution about near-term developments.

In sum, Wright has not alleged any facts that would render the general opinions and projections of Akers and Clippard actionable under § 10(b) and Rule 10b–5. The second amended complaint does not contain any factual allegations that might support an inference that Akers' and Clippard's publicly stated opinions regarding IBM's future performance were made in bad faith. The allegedly concealed information, far from seriously undermining the validity of the publicly stated opinions, is both consistent with and provides a reasonable basis for the publicly stated opinions regarding future company performance. Accord-

ingly, the statements and omissions upon which Wright bases this action are not actionable. *See In re Apple Computer,* 886 F.2d at 1113.

Wright's failure to predicate this suit upon actionable statements and omissions obviates the need to address the other grounds for dismissal advanced by IBM. Wright has had three opportunities to formulate an actionable claim against IBM. Wright's second amended complaint was filed after the close of written discovery involving production of over 120,000 IBM documents and after IBM moved for judgment on the pleadings based on the first amended complaint. Having had the benefit of extensive discovery and insight into IBM's defenses, Wright, after more than a year of litigation, alleges securities fraud based only on general opinions that are not actionable. Under these circumstances, the court concludes that further leave to amend the complaint would be futile and that this action should be dismissed.

### CONCLUSION

International Business Machines Corporation's motion to dismiss the consolidated and second amended complaint is granted. This action is dismissed with prejudice.