In re **BALLY MANUFACTURING SECURITIES LITIGATION.**

**No. 90 C 6057.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1992.

Michael David Craig, Richard S. Schiffrin, Schiffrin & Craig, Ltd., Buffalo Grove, Ill., Mark C. Gardy, Lee Squitieri, Abbey & Ellis, Jeffrey Squire, Kaufman, Malchman, Kaufman & Kirby, New York City, for David Arazie, Paul Karinsky, Kevin O'Sullivan, Arthur Yorkes and Gary Hurlick.

William Denby Heinz, Jerold Sherwin Solovy, Norman M. Hirsch, C. John Koch, Patricia A. Bronte, Jenner & Block, Chicago, Ill., for Robert E. Mullane, Paul J. Johnson, Patrick L. O'Malley, William E. Chandler and Roger N. Keesee.

Dennis Block, Joseph Allerhand, Weil, Gotshal & Manges, New York City, for Bally Mfg. Corp.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On February 6, 1992, this Court certified plaintiffs' class action claim against Bally Manufacturing for securities violations. At the same time, we dismissed Count I of the original amended complaint for failing to allege facts with sufficient particularity under Federal Rule of Civil Procedure 9(b). We also dismissed Counts II and III for lack of supplemental jurisdiction, and entered judgment. Plaintiffs now ask the Court to clarify the judgment to indicate whether leave to amend their complaint was granted, or, alternatively, to vacate the judgment under Rule 60(b) of the Federal Rules of Civil Procedure and grant leave to amend their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, we clarify our Memorandum Opinion and Order ("Order")[1] to indicate that we did not grant plaintiffs leave to amend their complaint, and we further deny their motion to vacate the judgment of dismissal and deny them leave to amend their complaint.

**1.** The Court's decision was published and will be cited as *In re Bally Manufacturing Securities Corp. Litigation,* 141 F.R.D. 262 (N.D.Ill.1992).

### I. Standard of Review

Since this motion stems from a judgment granting a motion to dismiss, the allegations of the complaint are taken as true. *See Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (citing *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972)); *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990). Furthermore, in determining whether to grant the plaintiffs' request for leave to amend the dismissed complaint, we take the allegations of the proposed amended complaint to be true.

### II. Factual Background

Both in their original amended complaint and in their proposed amended complaint, plaintiffs allege that individual defendants Robert E. Mullane, Roger Keesee, Paul J. Johnson, Patrick L. O'Malley, William E. Chandler and Bally Manufacturing Company (collectively, "Bally") misrepresented and fraudulently concealed the true financial health of the company in violation of state and federal law. In essence, plaintiffs assert that when Bally made statements during the class period indicating its financial stability and positive prospects, it was aware of a severe cash flow shortfall which, ultimately, caused the company to suspend dividend payments on its common stock and miss a scheduled interest payment. Specifically, plaintiffs allege that Bally was aware of 1) reduced cash flow from its health clubs due to a new membership payment plan, 2) declining revenue at its Atlantic City and Las Vegas casinos due to increased competition, 3) the possibility, and later the reality, that casino regulators would limit Bally's ability to use its casino resources to service the debts of the company's other business segments, and 4) increased total debt.[2] The same day Bally announced suspension of dividends and its inability to make a scheduled interest payment, the company's stock fell from a class period high of $10\frac{5}{8}$ per share to $3\frac{1}{8}$ per share.

**2.** For a more detailed discussion of the factual background, see the Factual Background section of the Order. *In re Bally Manufacturing Securities Corp. Litigation,* 141 F.R.D. 262, 264–266 (N.D.Ill.1992).

## III. Discussion

### A. *Plaintiffs' Motion to Clarify the Order*

■ At the outset, plaintiffs request that this Court clarify its Order to indicate whether plaintiffs' request for leave to amend was granted. (Plaintiffs' Motion at p. 1). Plaintiffs' request for leave to amend their complaint was buried in a footnote in their response to Bally's motion to dismiss. Plaintiffs' Response at n. 9. Moreover, plaintiffs' "request" was not accompanied by any proposed amendments, leaving this Court without materials on which to grant such a request. *See Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1139 (7th Cir.1987), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (although not required, the better practice is that a motion for leave to amend should be accompanied by the proposed amendments). For these reasons, our Order did not grant plaintiffs leave to amend.

### B. *Plaintiffs' Motion to Vacate the Judgment and Grant Leave to Amend*

In the alternative, plaintiffs ask this Court for leave to amend their dismissed complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiffs' Motion at p. 1. In order to do so, we must vacate the judgment already entered in this action.

In general, leave to amend a complaint "shall be freely given when justice so requires." Rule 15(a), F.R.Civ.P. However, "[t]he decision to allow an amendment after dismissal ... lies within the sound discretion of the trial court." *Twohy v. First Nat'l. Bank of Chicago*, 758 F.2d 1185, 1195–96 (7th Cir.1985).[3] The key question before the Court, then, is whether plaintiffs' proposed amendments are sufficient to cure the fatal deficiencies of the original amended complaint. While the plaintiffs,

after extensive discovery, do allege additional facts in their amended complaint, we find that the allegations still fail to comply with Rule 9(b).

■ As we outlined in our Order, Bally's allegedly fraudulent statements constituted predictive, forward-looking statements. *In re Bally Mfg. Securities Corp. Litigation*, 141 F.R.D. 262, 271–72 (N.D.Ill.1992). Such statements fall within the "safe harbor" provided by Exchange Act Rule 3b–6. *See id.* (citing Exchange Act Rule 3b–6, 17 C.F.R. § 240.3b–6). In order to penetrate this safe harbor, investors must demonstrate strong facts indicating that the defendant company had no reasonable basis for its predictions. *Id.  See also Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509 (7th Cir.1989). To support liability, it is not enough that forward-looking statements turned out to be inaccurate. *Id.* at 272 (citing *Wielgos*, 892 F.2d at 512). This circuit requires a " 'rigorous explanation of why the plaintiff believes that the defendant's statements are fraudulent....' " *In re Bally*, 141 F.R.D. at 273 (quoting, *In re First Chicago*, 769 F.Supp. 1444, 1453–4 & n. 4 (N.D.Ill.1991)).

■ In the original amended complaint, we found that "plaintiffs fail[ed] to allege facts that might show why Bally's statements were fraudulent, and this failure must lead to dismissal." *In re Bally*, 141 F.R.D. at 273 (citing, *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)). Plaintiffs fail to allege sufficient new facts to cure the deficiencies in its original amended complaint. Many of the new allegations merely provide more specific support for plaintiffs' earlier allegations that Bally was aware 1) that increased competition in Las Vegas and Atlantic City was going to have a negative impact on its revenues, 2) that new membership pricing was going to reduce cash flow from its

---

**3.** We note that it is within our discretion to deny post-judgment leave to amend where a plaintiff displays a lack of diligence or where the defendant has been prejudiced. Arguably, plaintiffs' failure to attach its proposed amended complaint to its motion both prejudiced Bally, by depriving it of the opportunity to respond, and displayed a lack of diligence. While we recognize that plaintiffs filed their motion for clarification, vacation, and leave to amend within three weeks of the Order, we also note that plaintiffs apparently possessed new supporting facts and details as early as November 8, 1991, when they offered to amend their complaint. Nonetheless, we will consider the merits of the proffered amendments.

health clubs, and 3) that casino regulators could, and did, limit Bally's ability to service the debts of other company segments.

For example, plaintiffs refer to various internal memos, with no description of who the memos are from, when they were sent, or who received them. One memo purportedly states that the opening of the Golden Nugget's Mirage had "taken some of the patron base away." Amended Complaint at ¶ 48. Another memo suggested that increased competition in Atlantic City from the Taj Mahal would cause a dramatic decline in table games revenue at Park Place. *Id.* Finally, plaintiffs allege that "internal forecasts indicated that the new pricing structure for memberships for the Health and Tennis Corporation would result in lower cash flow by $20.3 million." Amended Complaint at ¶ 56.

These additional facts, however, are not enough to establish grounds for an inference of fraud. There are still no facts indicating who knew this information, or that knowledge of this information necessarily eliminated any reasonable basis for Bally's statements. Without these elements, plaintiffs' additional facts simply buttress insufficient allegations.

█ Other new facts similarly fail to allege "the who, what, when, where, and how" required in this circuit. *See DiLeo,* 901 F.2d at 627; *In re First Chicago,* 769 F.Supp. at 1453. Plaintiffs offer two particularly specific and relevant[4] new allegations in their amended complaint. First, they allege the existence of a memo received by Defendants Chandler and Johnson advising them "that there were adjust-

ments to the calculation of unrestricted retained earnings that, if recorded, would preclude the declaration of common dividends."[5] Amended Complaint at ¶ 63. However, plaintiffs fail to allege who sent the memo, when it was received, or to allege that the memo represented a final determination reached within Bally. An internal projection, however, cannot serve as the basis for liability unless it has been finalized through some company review process. *See Wielgos,* 892 F.2d at 516.[6] Because plaintiffs fail to allege that the memo was received during the class period and, more importantly, that it represented a finalized projection, this new fact does not cure the complaint's deficiencies.

Next, plaintiffs allege that there was an internal memo indicating that as of September 30, 1990 Bally required a cash flow of $149,569,000 in order to avoid default of cash flow ratios under the corporate revolver, but projecting that Bally's cash flow would be only $146,057,000. Amended Complaint at ¶ 56. As with other allegations, however, plaintiffs fail to indicate when this memo was sent, who drafted it, and who received it. Nor do they suggest, or offer any facts supporting an inference, that this was a final projection that was known to responsible Bally officers.

Accordingly, because plaintiffs' amended complaint fails to cure the Rule 9(b) deficiencies of their original amended complaint, we deny plaintiffs' motion for leave to amend.[7]

### C. *Effect of Court's Decision on Absent Class Members*

█ Once a class has been certified, Federal Rule of Civil Procedure 23(b)(3) re-

---

**4.** By relevant, we mean that this allegation purports to demonstrate that key managers were aware of a severe cash flow shortfall at the time they made statements indicating a secure cash position.

**5.** These are the plaintiffs' words, not the actual words contained in the memo.

**6.** The *Wielgos* court stated as follows:
Because firms may withhold even completed estimates, they may withhold in-house estimates that are in the process of consideration and revision. Any other position would mean that once the annual cycle of estimation begins, a firm must cease selling stock until it

has resolved internal disputes and is ready with a new projection. Yet because large firms are eternally in the process of generating and revising estimates—they may have large staffs devoted to nothing else—a demand for revelation or delay would be equivalent to a bar on the use of projections if the firm wants to raise new capital. [The safe harbor rule] is designed to release enterprises from such binds.
892 F.2d at 516.

**7.** Because we do not grant plaintiffs leave to amend, there is no need to vacate our Order.

quires that notice and an opportunity to opt-out must be sent to absent class members. Because the motions for class certification and dismissal were decided simultaneously here, no such notice was given. Notice to class members, however, is necessary in order for the court to exercise jurisdiction. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). This Court, then, may not exercise jurisdiction over absent class members. Accordingly, unless absent class members are given an opportunity to opt out of the class, the judgment is only binding on the named plaintiffs in this action. *See Gert v. Elgin Nat'l. Industries, Inc.*, 773 F.2d 154, 159–69 (7th Cir.1985); *Roberts v. American Airlines, Inc.*, 526 F.2d 757, 762 (7th Cir.1975).

As Bally acknowledges, "the only persons conceivably prejudiced by the failure to give notice are defendants." Bally's Response to Motion to Clarify the Order at p. 10. Bally, however, rather than seeking to vacate our Order, is "willing to forego notice here and to bear the resulting lack of *res judicata* effect as to the individual claims of absent class members." *Id.* Accordingly, we do not vacate our Order, and the judgment is only binding on the named plaintiffs in this action.[8]

### IV. Conclusion

For the foregoing reasons, we clarify our Order to indicate that we did not grant plaintiffs leave to amend at that time. Furthermore, plaintiffs' motion for vacation of the judgment of dismissal and for leave to amend is denied. It is so ordered.

---

**8.** The named plaintiffs are David Arazie, Gary Hurlick, Paul Karinsky, William and Ann Klein, Aldo Mirizzi, Lawrence and Florence Moss, Kevin O'Sullivan, Jeffrey Starr, and Arthur Yorkes.